# Blank's Appeal.

Grant.
3g 192
196  499

1. Neither the heirs nor the creditors of the heirs can receive anything out of the ancestor's estate, so long as any debts of the ancestor which are valid and subsisting liens remain unpaid, even though it is taken by one of the heirs at a valuation fixed by an inquest, and his recognizance given therefor.

2. If an administrator pays debts to a larger amount than he has in his hands, he can only reimburse himself by settling an account.

3. A debt paid by an administrator is not assigned to him, but extinguished, and he has no right of subrogation to the original creditor.

4. After an administrator has shown in the legal manner that there is a balance due him from the estate, he has a right to recover it out of the per-sonalty, if there be any left, or out of the land.

APPEAL from the decree of the Orphans' Court of *Lehigh County*.

The facts fully appear in the opinion of the court, delivered by

BLACK, J.—Abraham Worman, senior, died the owner of a valuable farm and some personal property. His debts, includ-ing those for which he was bound as surety, and which it was at first thought his estate would not be compelled to pay, amounted to greatly more than the value of both his land and goods. He left several children. His son, Abraham Worman, Jr., became one of his administrators, but never filed an account. He also took the real estate at the valuation fixed by an inquest, and gave the usual recognizances, but never paid anything to

the other heirs. After this the estate was ascertained to be in-
solvent. A new administrator was appointed, the old ones
being removed. The Orphans' Court made an order to sell the
land for the payment of debts, and we are now reviewing a
decree for the distribution of the proceeds.

No proposition can be plainer or sounder than this : That
when a decedent's estate is sold under an order of the Orphans'
Court, for the payment of his debts, the proceeds must be
applied to those debts. Neither his heirs, nor the creditors of
his heirs, can receive anything out of it so long as any debt of
the ancestor, which is valid and a subsisting lien upon the land,
remains unpaid. Of course it does not matter, unless there be
a surplus, whether it has been appraised and divided, or
whether it remains the common property of all the heirs down
to the time of the sale. If there be nothing on the record to
take this case out of the established rule, then we cannot
choose but say that the money made by the administrator
should have been divided among the creditors of Abraham
Worman, senior, without allowing any other kind of right to
interfere. That would have been to pay to the Moravian So-
ciety the principal and interest due on the mortgage given
them by the elder Worman in his lifetime, and to distribute
the balance among the *bond creditors, pro rata*. But the court
ordered that the Moravian Society should have, not only the
amount of their mortgage, which was all the debt they pre-
tended to claim against the decedent, but also the sum of
$522 27 more, on a debt of theirs for money loaned to Abra-
ham Worman the younger, after his father's death. This was
done, however, on very plausible grounds. The son, while he
was owner of the property, had mortgaged it to the society for
the debts of the father, as administrator, and got a credit for
those payments on the recognizances he had given the heirs.
The court, on these facts, allowed him to represent the person
whom he had paid, and awarded the sum above mentioned to
*him*, not as an heir, but as a creditor. The court having a fund
of his under their control, thought it proper to allow his credi-
tor to take it out.

The right of the younger Worman to the $522 27 seems
scarcely to have been contested in the Orphans' Court, and
certainly, it has been very faintly denied here. The struggle of
the appellant's counsel was to prove, that conceding it to be his
money, they were better entitled to it than the Moravian Society
to whom it was given by the court below. The appellants were
also creditors of his. He was jointly liable with his father for
the very debts on which the estate was sold, and the father and
son are equally bound in law and equity to pay them. The
principal weight of the argument was thrown on this question,

whether, as regarded the son's share of the proceeds, a separate mortgage creditor of the son was entitled to a preference over those who had joint bonds against the son and father both, but no mortgage against either. For one side, it is said that the mortgage covered whatsoever interest the son had in the land. The sum now in dispute ($522) represents that interest, and the mortgagee ought to have it. On the other hand, it is insisted that this cannot be done without two subrogations : first, of the son to the father's creditors, and then of his own creditors to him; and that both these subrogations would be against equity, because they make the very person who was bound in good conscience to pay the appellants, the instrument of taking away from them the fund which they would otherwise have taken without dispute.

We cannot get at this point so as to decide it, without first determining whether Abraham Worman, the younger, was entitled to any part of the proceeds. The right of the Moravian Society depends on his right, and we must know the nature and character of it before we can determine who has the best claim to the privilege of standing in his shoes. If we find him to have no right at all, the controversy will be ended without further trouble.

I have said that he was one of his father's administrators. He settled no account, and neither did his co-administrators. But after he had taken the land at the valuation, he came into court, by his attorney, and demanded a credit on his recognizance for $3,407 97 debts of the estate, which he said had been paid by him. The court assented, and directed the clerk to examine the amount of the debts and enter the credit. This is the sole basis of his claim to be considered as a creditor of his father. It comes to nothing and less than nothing. No court has power to settle an administrator account after this fashion. The statute prescribes the mode of doing it, and it cannot be done otherwise. It must pass the register, be advertised, and can only be confirmed by the court after full time for all parties to except. Even consent could not give the Orphans' Court jurisdiction to credit an administrator in this way for payment made. Jurisdiction was not the only thing wanting. His co-administrator did not join. No notice of the application was given so far as appears to anybody; no proof was produced that the debts were claimed, nor evidence of their payment. The matter was not even verified by the oath of the accountant; what is worse, he did not charge himself with the goods which came to his hands, and the $3,049, for which he claimed credit, consisted in part of the Moravian Society's mortgage, which it is admitted that he never paid. But it is unnecessary to speak of the inaccuracies of the pro

[Darlington v. Taylor.]

ceeding. It is totally null and void. It had no binding effect whatever, and does not furnish a tittle of evidence that the person at whose request it was done ever paid a farthing. If an administrator pays debts to a larger amount than the assets in his hands, he has but one possible way of being reimbursed, and that is to settle a regular administrator's account. A debt paid by an administrator is not assigned to him, but extinguished, and he has no right of subrogation to the original creditor. But after he has shown in the legal manner that there is a balance due him from the estate, he has a right to recover it out of the personalty, if there be any left, or out of the lands. In no other way can he be permitted to assert that he has paid, as administrator, more than he has received. It follows from this that Abraham Worman, Jr., had no estate or claim, legal or equitable, in or against the land of his father, and that the sum awarded by the court to the Moravian Society, over and above the amount of their claim against Abraham Worman, sen., ought to have been distributed to the appellants.

It is therefore considered and adjudged that the decree of the Orphans' Court of Lehigh County be reversed, and it is now here decreed that the proceeds of the sale of the land of Abraham Worman, Sr., deceased, made by his administrator, be distributed as follows, that is to say, first, to the Society of the United Brethren for Propagating the Gospel among the Heathens, so much of the fund as may satisfy the debt and interest due on their mortgage against A. Worman, Sr.; and the balance, *pro rata*, in equal proportions, among all the other creditors of said A. Worman, Sr., deceased.